UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT B. TAPLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-cv-00227-E |
| | § | |
| | § | |
| SIMPLIFILE, LC, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Simplifile, LC's Partial Motion for Summary Judgment (Doc. No. 40). For the following reasons, the Court **GRANTS** the motion.

#### BACKGROUND

In this action, Tapley, an African American, asserts a claims for race discrimination under 42 U.S.C. § 1981 against his former employer Simplifile, LC (Simplifile) based on its decisions to (1) include him in a reduction in force (RIF) of sales personnel and (2) revoke its offer of a severance agreement and payment after learning that he had been operating an insurance business during his employment. Simplifile moves for summary judgment on Tapley's section 1981 claim, contending he has no evidence to show that either his inclusion in the RIF or the decision to revoke the severance offer was a pretext for race discrimination. Simplifile also asserts there is no evidence that any similarly-situated non-African-American employees received more favorable treatment with respect to its decision to revoke Tapley's severance offer.

1

The summary judgment evidence shows that Simplifile connects private businesses with governmental agencies to enable and simplify the electronic filing of legal and other documents involved in real estate transactions (Doc. 42, p. 5).  In 2009, Simplifile President Paul Clifford hired Tapley to be Regional Sales Director for Texas; Louisiana later was added to Tapley's territory  (*Id.*, pp. 5-6, 38).  As sales director, Tapley sold Simplifile products to real estate submitters and sold/assisted counties in signing up to use Simplifile's systems (*Id.*, p. 37).

Starting in 2016, Simplifile required its employees, including Tapley, to enter into a Confidentiality, Non-Solicitation and Non-Compete Agreement (Confidentiality Agreement) in order to better protect its confidential information (*Id.*, pp. 6, 28-35, 92-93).  Under the Confidentiality Agreement, which was "material consideration" for his continued at-will employment, Tapley agreed not to enter into any oral or written agreement that conflicted with the performance of his full-time job with Simplifile and to provide written notification if he intended to engage in certain activities, including, but not limited to, owning or operating another business, "regardless of the type of business or time commitment required" (*Id.*, pp. 30, 95).  The Confidentiality Agreement provided that it represented their entire agreement on the subjects therein and could not be modified except by a written agreement that referred to the Confidentiality Agreement and was signed by both parties (*Id.*, pp. 31-32).

Initially, Simplifile's Texas sales were strong but, after time, sales growth slowed (*Id.*, p. 7). In mid-2018, a review of sales data, projections, and conversations with various sales directors, including Tapley, caused Vicki DiPasquale, Simplifile Vice President of Sales, to believe Simplifile was overstaffed in the sales director position (*Id.*, p. 39).  In late 2018, Clifford, DiPasquale, and Auri Burnham, Simplifile's Vice President of Finance and Accounting, determined to reduce sales director positions by three (Doc. 42, pp. 8, 39).  DiPasquale then

analyzed historical sales data and interviewed each sales director regarding future growth opportunities in their states (*Id.*, pp. 8, 39-40). During that process, Tapley told DiPasquale that he believed future growth in Texas was likely limited and, specifically, that growth percentages were probably going to be flat or not grow as quickly or at the same percentages as years past (*Id.*, pp. 39-40, 88, 161, 168). Based on Simplifile sales data and sales director feedback about future growth opportunities, DiPasquale recommended that the sales director positions held by Tapley, Randy Wilkey, and Melanie Gornick be eliminated, and Clifford and Burnham agreed with her recommendation (*Id.*, p. 7).

In November 2018, Tapley, Wilkey, and Gornick were laid off pursuant to the RIF, and sales opportunities in their territories were redistributed to other, remaining sales directors (*Id.*, pp. 7, 41-42, 84, 88-89, 96; Doc. 45, pp. 130-131). They were offered a separation package in exchange for a release of claims (*Id.*, pp. 7-8). Tapley accepted the package and agreed to release any claims, including, but not limited to, claims for race discrimination, against Simplifile (*Id.*, pp. 97-98, 131-136). Tapley further agreed that nothing in his release changed or limited the rights or obligations under the Confidentiality Agreement (*Id.*, pp. 98, 134).

Shortly thereafter, Jeff Pettine, who added Texas to his territory, mentioned to another sales director, John Riddell, that a number of leads in Texas had not been pursued and Simplifile was behind on the number of counties enrolled (*Id.*, pp. 176, 180). Pettine wondered what Tapley had been doing (*Id.*). After their discussion, Riddell ran a Google search, which showed Tapley owned and was the managing member of an Allstate Insurance agency, the "Tapley Group," formed in 2014 (*Id.*, pp. 41-42, 56, 176-177). Another website showing Tapley's involvement in a "businessman's" group appeared to omit Tapley's nine-year employment with

Simplifile, but listed his other employment (Doc. 42, p. 177). Riddell forwarded the website links to DiPasquale (*Id.*, pp. 56, 177).

DiPasquale reviewed the information and confirmed that Tapley appeared to own an Allstate agency, which bore his name, had a physical office location with employees, and was open during normal business hours (*Id.*, pp. 41-42, 53, 58-60). DiPasquale forwarded the information to Clifford and others at Simplifile (*Id.*) She and Clifford also viewed a publicly-available report on "Brokercheck," a Financial Industry Regulatory Authority (FINRA) website, which misrepresented, under penalty of perjury, that Tapley had not been employed with Simplifile since 2014 (*Id.*, pp. 8-9, 42, 63-69, 98-99, 101, 104, 163). Tapley never told DiPasquale that he owned and operated an insurance business or provided notice of it in writing as required by the Confidentiality Agreement[1] (*Id.*, pp. 41-42, 56). After considering this information, Simplifile determined Tapley had breached the Confidentiality Agreement and notified Tapley that the termination of his employment was being re-classified as "for cause" and, as a result, he was not eligible for severance pay (Doc. 42, pp. 43, 62-69, 139, 163). According to Clifford and DiPasquale, had Simplifile been aware that Tapley owned and was operating an entirely separate business while working for Simplifile, in breach of the Confidentiality Agreement, his employment would have been terminated (*Id.*, pp. 8, 41-42).

## Legal Standard

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact

---

[1] Tapley testified he had a general conversation with DiPasquale at one point between 2015 and 2018 regarding their retirement plans in which he referred to his "business," but did not provide any details about the business or his ownership of, or involvement in, the business (Doc. 42, p. 95). DiPasquale does not recall the discussion (*Id.*, p. 160).

and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit," and "[a] factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted)). A court must "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The party moving for summary judgment bears the initial burden of identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries its burden, the nonmovant "must go beyond the pleadings and present specific facts indicating a genuine issue for trial in order to avoid summary judgment." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (*citing Celotex*, 477 U.S. at 324). The nonmovant must "show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Courts must "'draw all reasonable inferences in favor of the nonmoving party' and 'refrain from making credibility determinations or weighing the evidence.'" *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). However, the "nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner*, 476 F.3d at 343.

## ANALYSIS

Section 1981 provides that:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Making and enforcing contracts "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). To prevail on a section 1981 claim, a plaintiff must establish: (1) he is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) there was discrimination concerning "one or more of the activities enumerated in the statute." *Sherrod v. United Way Worldwide*, 821 F. App'x 311, 316 (5th Cir. 2020) (per curiam) (citation omitted). The plaintiff also must demonstrate that "race was a but-for cause of [his] injury." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020).

Where the parties agree, as in this case, that there is no direct evidence of race discrimination, a plaintiff's section 1981 claims are subject to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Morris v. Town of Indep.*, 827

6

F.3d 396, 400 (5th Cir. 2016).  First, a plaintiff must present evidence of each element of a *prima facie* case of race discrimination: (1) he was in a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside of his protected class or was otherwise treated less favorably than similarly situated employees.  *Id*.

If a plaintiff successfully establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *See Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016) (citing *McDonnell Douglas*, 411 U.S. at 802).  If the employer meets its burden, the presumption of discrimination disappears and the burden shifts to the plaintiff to establish, with "substantial evidence," that the employer's proffered reason is pretextual.  *See Hernandez v. Metro. Transit Auth. of Harris Cty.*, 673 F. App'x 414, 419 (5th Cir. 2016) (quoting *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001)).  Pretext can be established by showing disparate treatment or that the defendant's explanation is "false or unworthy of credence."  *Wallace v. Seton Family of Hosps.*, 777 F. App'x 83, 89 (5th Cir. 2019).

A. <u>Tapley's Termination</u>

Simplifile asserts that, assuming Tapley could establish a prima facie case of discrimination, he has no evidence that his selection for inclusion in the RIF was a pretext for discrimination.  Simplifile maintains, and the Court agrees, that the RIF was a legitimate, non-discriminatory reason for Tapley's termination.  *Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-cv-1790-D, 2014 WL 1714487, at *8 (N.D. Tex. Apr. 30, 2014) ("A [RIF] 'is itself a legitimate, nondiscriminatory reason for discharge.'") (quoting *Bourgeois v. Miss. Valley State Univ.*, 507 F. App'x 386, 388 (5th Cir. 2013)).  The evidence shows that Simplifile sought to

reduce its salesforce in states where it believed future growth opportunities would be limited (Doc. 42, pp. 7, 39-40). Further, Clifford, who hired Tapley, also made the decision, along with DiPasquale and Burnham, to terminate Tapley (*Id.*, pp. 6-7), and, where the same decisionmaker is involved in both the hiring and termination decisions, a presumption arises that discriminatory animus is not present. *Gilbert v. Big Bros. Big Sisters of Am., Inc.*, 262 F. Supp.3d 402, 409 (N.D. Tex. 2017).

With Simplifile having presented a legitimate, nondiscriminatory reason for Tapley's termination, the burden shifts to Tapley to present some evidence to show the RIF was a pretext and, but for his race, he would not have been terminated. As evidence of pretext,[2] Tapley points to a commission report to show he was performing well and another chart showing he was fourth, and not one of the top three, in a sales director ranking of "lowest growth revenue dollar amounts over monthly" (Doc. 45, pp. 91, 138-140). The evidence, however, shows the RIF was based on the outlook for future sales growth by territory, Texas was a low sales growth state, and the three sales directors subject to the RIF were the lowest in both growth percentages and growth revenue dollars (Doc. 42, pp. 8, 39-40, 46, 49, 51-52, 88). The fact that Tapley disagrees with Simplifile's RIF selection criterion is not evidence to show that race motivated Simplifile's decision to include him in the RIF. *See Quintana v. Fujifilm N. Am. Corp.*, 96 F. Supp.3d 601, 617 (N.D. Tex.), *aff'd*, 628 F. App'x 252 (5th Cir. 2015) (affirming summary judgment for defendant where plaintiff argued different criteria should have been used for RIF); *see also Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not

---

[2] The Court notes that the introduction of Tapley's response to Simplifile's summary judgment motion refers to a mid-2019 acquisition of Simplifile by Intercontinental Exchange, Inc. (ICE) and claims that he was "cast aside" and "pretextually disposed of" so that "Simplifile would have a slightly trimmed down lily-white race workforce to present to ICE" (Doc. 44, p. 6). Tapley provides no evidence to support the allegation, which is not discussed anywhere else in his response. Further, the evidence shows that Simplifile's discussions regarding the ICE transaction began in or around February 2019, after Tapley's termination, and had nothing to do with the RIF (Doc. 42, p. 12).

whether an employer makes an erroneous decision; it is whether the decision was made with discriminatory motive").

Tapley's response to Simplifile's summary judgment motion also includes a list of "acts of racial discrimination" that, although not referred to within his argument, the Court will assume he intends to show pretext. Tapley first contends generally that, because he was Simplifile's only African American sales executive, "by definition any action taken by Simplifile against [him] that was not taken against other similarly situated non-Black employees … was discriminatory." Tapley's assertion, however, is simply a subjective conclusion and does not raise an inference of pretext. *See, e.g., Dean v. Prop. One Inc.*, 51 F. App'x 929, 930, 2002 WL 31415198, at *3 (5th Cir. 2002) (per curiam) (affirming dismissal of race discrimination claim when plaintiff, the defendant's only African-American employee, offered no evidence of pretext for her termination other than her own conclusion that the decision was race-based).

Tapley also directs the Court to a New Employment Information Form, on which Tapley's race/ethnicity was marked as "Asian or Pacific Islander" instead of "Black (Non-Hispanic)" (Doc. 45, p. 233).[3] The document, however, is signed by Tapley. Clifford, who was not involved in completing employee personnel paperwork, understood that this type of information was normally completed by the employee and, in any event, was unaware that Tapley had been misidentified as "Asian or Pacific Islander" during his employment (Doc. 42, p. 12). The Court finds this misidentification on a single form in Tapley's personnel file is not evidence of rase discrimination, especially for the purpose of showing the RIF years later was a pretext.

---

[3] Simplifile has filed objections to this document and a number of others submitted by Tapley as evidence in support of his response to the summary judgment motion (Doc. 48). Simplifile also objects that multiple purported statements of fact in the response contain no citation to the record. Having considered each objection with the summary judgment motion, the Court finds that the objected-to documents, assuming they are admissible, fail to raise a genuine issue of material fact.

Tapley next complains of the following discriminatory statements: (1) a manager named Eric said, "now that you're hired, we can ask you all the illegal questions we wanted to during your interview," and proceeded to ask questions about the foods Tapley ate, the car he drove, and what he did for fun" during a lunch meeting shortly after Tapley was employed (Doc. 42, p. 74-76); (2) the same manager used the words "you people" during a discussion about sales sometime later (*Id.*, p. 77); and (3) a co-worker said, "I'm sure you voted for President Obama" (*Id.*, p. 81). To the extent these statements were racially-charged, "[t]o be relevant evidence considered as part of a broader circumstantial case [of discrimination], 'the comments must show: (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker.'" *Wallace*, 777 F. App'x at 90 n.9 (quoting *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475-76 (5th Cir. 2015)). These statements, made years before his termination, were not made by Clifford, DiPasquale, or Burnham and, thus, are not relevant to show the RIF was pretext for race discrimination.

Tapley also argues that Simplifile's reassignment of his territories constituted a circumstantial *prima facie* case of discrimination. To the extent Tapley also intends to argue the reassignment is evidence of pretext, the Court finds he has not satisfied his burden. Although Tapley asserts that his position was filled by Pettine and Johnstone, white males, the evidence shows that Simplifile eliminated his sales director position, along with two others, in the RIF (Doc. 42, p. 40). Then, his sales territories were redistributed to Pettine and Johnston with respect to growth opportunities; existing accounts were not part of the redistribution (Doc. 45, pp. 130-131). Tapley also cites to a spreadsheet showing the "submission revenue by submitter state yearly totals" for New York (which he asserts is in Pettine's sales territory) was estimated

through year end 2018 as 91 percent, while Texas was estimated at 100 percent (Doc. 45, p. 86). Without any further explanation or citation to evidence, Tapley asserts that he was fired because Pettine "obviously need[ed] help." Tapley, however, offers no evidence (or argument) to show how the estimated 2018 revenue figure might be relevant to the RIF criterion or how, with respect to the RIF, he was treated differently than Pettine.

Finally, Tapley complains that he was discriminated against with respect to his compensation because, in order to compete for business in Texas, he was required to waive Simplifile's annual $395 customer license fees, which diminished his commission. Although Tapley complains Simplifile's other, non-African-American sales directors, were not similarly penalized, he offers no evidence to show that any penalty he suffered was due to race discrimination as opposed to geography.

Tapley's personal, subjective belief that he suffered discrimination simply is not sufficient to raise a reasonable inference of pretext. *See, e.g., Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 141, 143 (5th Cir. 1996) (affirming district court's finding that plaintiff's "subjective belief that she was being discriminated against . . . on the basis of her race was not enough"); *Banda v. Owens Corning Corp.*, No. 3:17-cv-1787-B, 2018 WL 6726542, at *10 (N.D. Tex. Dec. 21, 2018) (plaintiff's "conclusory allegations and subjective belief are insufficient to show that his race/national origin played any role, much less lay at the heart of, Defendant's termination decision to satisfy a finding of pretext); *McCullar v. Methodist Hosp. of Dallas*, No. 3:10-cv-1895-K, 2012 WL 760074, at *15 (N.D. Tex. Mar. 8, 2012). On this record, the Court finds there is no evidence that Simplifile's RIF, and Tapley's inclusion in it, was a pretext for race discrimination and, therefore, Simplifile is entitled to summary judgment on Tapley's section 1981 claim related to his termination.

B.  <u>Revocation of Severance Offer</u>

Simplifile first contends that, because there are no similarly-situated non-African-American employees who received more favorable treatment, Tapley cannot establish a *prima facie* case of discrimination related to its decision to revoke the severance. To survive summary judgment, Tapley "must show that he was treated less favorably than others under nearly identical circumstances." *Morris*, 827 F.3d at 401 (internal quotations and citations omitted); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). To do so, he "must show that differences between his conduct and that of his proffered comparator did not account for the differential treatment they received." *Ratliff v. Advisors Asset Mgmt., Inc.*, 660 F. App'x 290, 292 (5th Cir. 2016). Tapley asserts that Wilkey and Gornick, who are not African-American, were "entitled to make and enforce the severance agreement" and, thus, received more favorable treatment. There is no evidence, however, that either Wilkey, Gornick, or any other sales director owned and operated a second business without notifying Simplifile and obtaining it's approval. As such, Tapley cannot establish a *prima facie* case of race discrimination.

Simplifile next asserts that, even had Tapley presented evidence of a *prima facie* case of discrimination, there is no evidence to raise a fact issue on pretext. Instead, the evidence shows, that, after Simplifile offered Tapley the severance pursuant to a separation agreement, DiPasquale learned that Tapley had owned and operated another business – one with a physical office and employees – for years with notifying Simplifile, in writing or otherwise, as required by the Confidentiality Agreement. And, Tapley's "Brokercheck" report misrepresented that his employment with Simplifile had ended in 2014, the same year he became affiliated with his new insurance business. Based on the information that Tapley had been working a second job, Clifford and DiPasquale believed that Tapley had deceived them, had not focused his business

efforts on his job, and breached the Confidentiality Agreement. As a result, they decided to convert his termination to one for cause and withdraw the severance offer (Doc. 42, pp. 8-9, 42, 95). The Court finds Simplifile's reason for withdrawing the severance offer was a legitimate, non-discriminatory reason. *See Eaglin v. Tex. Children's Hosp.*, 801 F. App'x 250, 257 (5th Cir. 2020) (terminating employee for violation of company policy is a legitimate, non-discriminatory business reason; "[e]stablishing that the employer's conclusion may have been incorrect is not enough to show pretext").

To show Simplifile's reason for revoking his severance was pretext for race discrimination, Tapley argues the Confidentiality Agreement is invalid because it was not signed by Simplifile, there was no valid consideration, and/or it was superseded by a subsequent employee handbook[4] (Doc. 45, p. 110). At issue, however, is not the Confidentiality Agreement's enforceability. Even if Simplifile's business decision to withdraw the severance agreement was made in a mistaken belief that the Confidentiality Agreement was enforceable, there is no evidence that the decision was based on discriminatory animus. *See Eaglin*, 801 F. App'x at 257; *Mayberry*, 55 F.3d at 1091.

Tapley also contends that non-African-American employees with "investments" in other businesses were not treated similarly. Specifically, Clifford had legal ownership of the corporate entity that owned the building holding Simplifile's headquarters, DiPasquale's husband and son ran a restaurant that the family owned until 2012, and, during 2019 and 2020, DiPasquale and her husband were members of a limited liability company that owned a commercial building (Doc. 42, p. 44-45, 143-144).

---

[4] The Court notes that the Confidentiality Agreement explicitly provided that it "may not be modified or amended except by a written agreement that refers to this Agreement," and the employment handbook made no mention of the Confidentiality Agreement.

Clifford and DiPasquale, however, were neither "similarly situated" to, nor engaged in "nearly identical" conduct as, Tapley. *See Morris*, 827 F.3d at 401. In addition to not being sales directors, Clifford and DiPasquale notified Simplifile of their outside business interests (Doc. 42, pp. 11, 143-144). Although Tapley testified that he referred to his "business" during a general conversation with DiPasquale about their retirement plans, he did not disclose the business was an insurance agency or describe his role at the agency (*Id.*, p. 95). And, unlike Tapley, Clifford and DiPasquale were not involved in the operations of their outside business interests (*Id.*, pp. 11, 143-144). In contrast, Tapley was the sole owner and a managing agent; his agency agreement with Allstate required that he "remain actively involved in the conduct of business at [his] sales location," have "sole and exclusive control" over his employees, and be responsible for all expenses incurred by, and maintain all financial record for, his agency (*Id.*, pp. 99-100, 188-197).

Tapley's response to Simplifile's summary judgment motion also alleges the following are acts of race discrimination:

(1) DiPasquale emailed Tapley following his termination to advise that Simplifile would file a police report if he did not return Simplifile-owned equipment, including a "laptop, phone, Sophos box, mifi) … etc."[5] (Doc. 45, pp. 75-78);

(2) Riddell, an avid golfer, was "rewarded" with Simplifile's Arizona sales territory for "turning [Tapley] in" to DiPasquale and Clifford (although alleging a connection between Riddell alerting DiPasquale to Tapley's insurance business and Riddell becoming sales director for Arizona, Tapley only cites to evidence of Riddell's affection for golf);

(3) After learning of Tapley's insurance business, DiPasquale wrote in internal emails: "[I'm] so mad I can't see straight;" the reason for Tapley's termination was going to be changed to "'with cause' so we don't need to pay severance;" and Simplifile should "either sue or at least notify Allstate's ethics committee" because Tapley had violated the "agreement

---

[5] According to DiPasquale, she had never threatened a terminated employee with police action before, but Tapley was the only former employee that had failed to promptly return company equipment (Doc. 42, p. 44).

14

        and policies by having a full time second [j]ob without telling us" (Doc. 45, pp. 196-198);

(4)     In response to a 2019 demand letter from Tapley's counsel, Simplifile's counsel wrote that, if Tapley pursues litigation, Simplifile will conduct extensive discovery into his Allstate business (*Id.*, pp. 182-185);

(5)     Clifford and DiPasquale were present on a 2019 telephonic hearing related to Simplifile's appeal of a Texas Workforce Commission decision approving Tapley's claim for unemployment benefits (*Id.*, pp. 16, 187-191);

(6)     Simplifile filed a counterclaim against Tapley in this action despite his efforts, which resulted in large profits for Simplifile; and

(7)     Simplifile, in this action, is disputing Tapley's discrimination claims, which it "admitted in the severance agreement . . . were valid and worth at least $39,000" (the severance agreement, however, contains standard provisions governing release of claims; there is no admission regarding a discrimination claim or any other claim) (Doc. 42, 131-136).

Viewing this evidence in the light most favorable to Tapley, the Court finds that no reasonable factfinder could infer that the complained-of conduct constituted intentional race discrimination. Instead, Tapley relies upon his own subjective conclusion that the conduct was discriminatory; without more, he does not raise a genuine dispute of material fact as to whether Simplifile intentionally discriminated against him. Because Tapley has failed to meet his burden by providing summary judgment evidence that Simplifile's legitimate, non-discriminatory reason for revoking his severance offer was pretext, the Court finds Simplifile also is entitled to summary judgment on Tapley's section 1981 claims related to revocation of his severance.

## CONCLUSION

For the foregoing reasons, the Court finds Simplifile's partial motion for summary judgment (Doc. No. 40) should be and is hereby **GRANTED**. The Court **DISMISSES** Tapley's section 1981 claims against Simplifile with prejudice.

**SO ORDERED**; signed February 3, 2021.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE